Good morning, Your Honors. Eric Grant for the Plaintiffs and Appellants. This is a putative class action involving the Ford Focus vehicle for the model years 2005 through 2011. Plaintiffs allege a defect in the design of the vehicle's rear suspension geometry for all of those model years. And plaintiffs have produced evidence that this design defect has two important consequences. First, as a Ford engineer himself said, this car is a tire eater. But the economic aspect is not the only consequence of the defect. It also has a safety aspect. And Ford itself transmitted no fewer than four special service messages to its thousands of dealers across the country and said to those dealers about this vehicle, there is, quote, vehicle drift when driving on wet or snow-covered roads. So the car slips around in wet conditions. Now, Ford admits that it never informed its customers of this defect. And that omission is the basis of two of plaintiffs' state law claims and brings me to our first issue. Are these vehicles front or rear wheel drive? Your Honor, I don't know. Perhaps the lawyer for Ford can tell us that. The defect involves the rear suspension, I'm sure of that. I honestly don't know. Well, the reason I ask, we don't come to the bench without knowledge. The last time I had the tires changed on my car, which is rear wheel drive, the tire people told me that the rear wheels, the rear tires would wear out faster than the front tires because it's a rear wheel drive. That's the reason I asked. And if you don't know, that's fine. I don't, Your Honor. Go ahead. So our first issue and the first basis for the district court's dismissal of many of these claims is a supposed failure by the plaintiffs to prove reliance on that omission. And the standard for reliance on an omission is well established, and I think we all agree on it. It's from the California Supreme Court. Plaintiffs must prove that had the omitted information been disclosed, they would have been aware of it. And what we're really arguing about here are what are the means or sources of information that count in conducting this reliance analysis. I take it Ford did not recall these vehicles. Correct, Your Honor. Ford did not recall and never did inform the customers of the defect and says to this day that there never was a defect, even though, interestingly, Ford itself, beginning with the 2012 model, made significant design changes to the rear suspension. In fact, those design changes had been in the works for years and years, but it took Ford a long time to implement them. So our plaintiffs all alleged or declared under penalty of perjury that had the defect been disclosed by Ford's authorized dealerships at the time the plaintiffs purchased the vehicles, they would have been aware of it, because all four plaintiffs test drove their vehicles and discussed safety and other aspects. Now, the district court said that means didn't count because the dealers were not Ford's agents. And plaintiffs submit that that was error because agency really isn't the issue here. We're not seeking to hold Ford liable for what its dealers did or didn't do. It's Ford's omission that's the focus here. And really, the standard which the district court used and which we submit is the correct one is plausibility. Kennedy, which theory are you speaking about at this time, express liability, implied liability? These two claims, Your Honor, are under two California consumer protection statutes, the Consumer Legal Remedies Act and the Unfair Competition Law. We use the acronyms CLRA and UCL. So these are not strictly products liability claims. These are two consumer protection statutes. So ---- I understand. How many theories are you proceeding under? Or statutes are you proceeding under? We have five claims, Your Honor, and they're listed, they're enumerated on page 5 of Appellant's opening brief. And what I'm trying to find out is the theory you are advancing now, does that apply to each one of the claims or only some of the claims? That applies to two of them. That applies to the Consumer Legal Remedies Act and the Unfair Competition Law. And this is addressed in both our opening brief and our reply brief as Roman numeral 1. And that's different from your claim under Song-Beverly, which is an implied warranty of merchantability. Correct, Your Honor. That is a different ---- That's what I was trying to get to. That is a different claim, and there's also express warranties. So on this omission, the standard the district court used, and we submit as the correct one, is a means or source of information counts for this purpose if it could plausibly contain the allegedly omitted fact. And the district court drew on a widely cited Federal district court case, and we've explained why we think that standard is consistent with California law. And I think most importantly, Ford has not proposed an alternative standard. So the question is, was it a plausible means? Now, remember, Ford didn't disclose the defect in any form, but would it have been plausible for Ford to disclose it through its authorized dealers? And I think drawing on the experiences that we've all had as car buyers, I think everyone who's ever bought a car knows that you get bombarded with information, maybe more than you want, when you go to an authorized dealership. And so I guess for me, I can imagine a meeting where Ford executives and maybe lawyers say, hey, how could we get this information out to our consumers? And if someone popped up and said, well, we could tell them when they go to the dealership, we could post it prominently, I think the response would be, it would not be, that's crazy, that's a silly way to inform consumers. I think everyone would agree that's a plausible way. So we submit that agency is not required, the plausibility standard that the district court used is the correct one, and that this plaintiff's thereby satisfied their duty to prove reliance on an omission. So with that, I'll move to the Song-Beverly Act claim and the implied warranty. And on that issue, the district court dismissed plaintiff's claims on the ground that they did not bring their claims outside of what the district court thought was an absolute one-year requirement in the governing statute. Okay. On Song-Beverly, the issue is whether the Mejia case, which is the California Court of Appeals case, whether we should follow that or the cases that are critical of Mejia. That's exactly the issue, Your Honor. And as this Court has said many times, the governing standard is that Federal courts should follow the State intermediate appellate courts on issues of State law unless there's convincing evidence that the California Supreme Court would decide otherwise. And there really is no such evidence here. Well, one place to start would be whether the losing party in Mejia asked for Supreme Court review. And they did, and the California Supreme Court said no. Absolutely correct, Your Honor. And in addition, the losing party and perhaps other parties that were interested asked the California Supreme Court to depublish the opinion, wipe it off the books, and the California Supreme Court said no. And as you saw from Ford's Rule 28J letter, Ford is assiduous in finding every possible published and unpublished case that might conceivably be relevant to this case and has not come up with a single case in which another California court has even criticized the Mejia case. Well, there are a lot of Federal district courts in California that have criticized the case, right? Correct, Your Honor. Some have criticized and not followed it, and some have followed it. And we submit that that's your job as the court of appeals is to settle that dispute. Well, there's another way to settle it. We could certify the question to the California Supreme Court. You could, Your Honor. I don't think you should, because I think your governing standard of convincing evidence is well established and — Not met. And certainly certification is not mandated. So with that, I'd like to move to the third issue, and that involves Ford's express warranties. And on that claim, the district court dismissed plaintiff's claims because the district court interpreted the warranty not to include design defects. And that's — we're alleging a design defect, not a manufacturing defect. And there, I think the court just misinterpreted the warranty. It's laid out in the excerpts of record at page 295, right there on a single page. And the key — Ford will quote you one part of the warranty that focuses on manufacturing defects, and that's a fair point. And if that's all there was, we would not prevail on this claim. But the warranty also expressly refers to defects may be unintentionally introduced into vehicles during the design and manufacturing processes. And then the warranty goes on to say that Ford provides the warranty, quote, in order to remedy any such defects. So we think a fair construction of Ford's express warranty, at least for the years 2007 through 2011, is that it does cover design defects. And I think that's an eminently sensible conclusion in light of the well-established principle that a written instrument is construed against the drafter, which, of course, in this case is Ford. And the California courts have said that principle applies with special force in contracts of adhesion like this one. You're handed the warranty. You don't have any chance to negotiate. So I see I'm down to about two minutes, Your Honor, and I'd like to reserve that for rebuttal unless you have immediate questions. Thank you, counsel. May it please the Court. My name is John Thomas. I represent the defendant, Ford Motor Company, in this case. The issue of whether the Ford Focus is, in fact, a tire — oh, by the way, it's a front-wheel drive vehicle. I'm not sure that that matters in this case. It probably doesn't. I was just interested. Go ahead. In whether or not there are allegations that the Focus is a tire heater doesn't really matter for the merits of this case, but I'd like to point out that the unrefuted evidence in this case is that the actual tire warranty wear for the Focus, 2005 model year and later, was actually 30 percent better than the average Ford fleet, and that the anecdotal reports, which led to this tire heater memo, which is really the basis for their whole claim, the anecdotal reports for the Focus were actually 60 percent less than the anecdotal reports for the fleet as a whole. And so the — again, it's not really relevant to the issues on appeal, but I don't want the Court to have the impression that it's somehow undisputed that the Focus has some sort of defect. With respect to the CLRA and UCL claims, plaintiffs assert that all they have to do is plausibly suggest some way that Ford might have made a disclosure that the plaintiffs in this case would have seen or been aware of. What they are, in effect, attempting to do is impose the motion to dismiss standard on a summary judgment motion. On a summary judgment motion, they have to do both. They both have to plausibly suggest a theory of disclosure that their clients would have been aware of, and they have to present evidence to support that theory. I suggest that in this particular case, they haven't done either, but they certainly have not presented any evidence. As I understand what they're — and it's not even clear to me today what they're saying. Mr. — Mr. Grant has argued that you can imagine people sitting around at Ford's dealership arguing that Ford has made a disclosure through the salesperson at the dealer or through signs posted at the dealerships, even though they're not arguing that dealerships are agents of Ford. And in fact, they say in their brief that agency is irrelevant, and they never raised agency below. Well, that's all very fine and good for Ford employees to be sitting in Dearborn speculating about what dealers might do when dealers are independent agents. So the plaintiffs are either doing or arguing one of two things. They're arguing either that Ford had a contractual right to dictate to dealerships what dealerships must say to potential customers or what they must post in their showrooms. If that's their theory, and that may be a plausible theory depending upon the disclosure, but if that's their theory, they had an obligation to present evidence. And that's what the district court said, is the district court said they haven't established agency, they haven't even argued agency, and they have not presented any evidence that Ford had a contractual right to dictate the disclosures made by the dealers. Now, it could be that plaintiffs are not really arguing that Ford had a contractual right. Perhaps they're arguing that Ford could simply have asked dealers to make this disclosure, and the dealers would have voluntarily complied. Well, there's no evidence of that. And in that context, the disclosure they wanted us to make is of critical importance. We asked them in discovery, what should we, Ford, have disclosed? And their answer was that Ford should have disclosed, quote, the fact that 2005 to 2011 Focus vehicles were not fit for their intended purposes, unquote. And so is it really plausible to say that if Ford had asked dealers to say, tell your customers that these vehicles are not fit for their intended purposes, is it really plausible to suggest that dealers would have complied with that request? I'm not so sure it is, and there's certainly no evidence that any dealer in the world would have done that. You know, if that was plaintiff's theory, they could have presented evidence, they could have taken the deposition of the dealership and the salespeople who sold these vehicles to the plaintiff. They could have showed that Ford made other requests for comparable disclosures. They could have proposed a more reasonable disclosure that they could have established that Ford might have asked its dealers to do. In any event, they presented no, assuming that there's a plausible theory here, there's no, as the court, district court correctly held, there's no evidence whatsoever to support that. So is your position that if Ford is aware of some design problem with a vehicle that they're manufacturing, they can just be mum and just deal with it internally and they don't have to relate any information to the dealers, they don't have to inform consumers at all? Well, the law in California and the law, as this Court stated in Wilson v. Hewlett-Packard, Packard is, in fact, that there is no obligation to disclose any defects unless they're safety-related. And that's an alternative grounds that we've argued in our motion. Their safety claim is real. Their own expert testified that this was a safe suspension. But that's not this issue, Your Honor. But there's also evidence in the record that their experts did say it was a safety issue on snow and ice, and there's other evidence that creates a factual dispute, isn't there? No, no. The only evidence is, is that if you let the tires degrade to the extent they become bald, it's dangerous at that point on snow and ice and on rain, for that matter. But that's the same as true for That's sort of different from, as you said, that it's different than the safety issue is different from Judge Maloney's basic question, which is, aside from safety, if they are aware of a defect, is it your position that they have no obligation to tell the consumers or the dealers of their knowledge of the defect? That's what the case law in California says, correct, Your Honor. If there's no safety-related defect, there's no obligation. And you can imagine, I mean, Ford, right now, Ford Is that the only, only defense to that is it has to be safety? Otherwise, if it is safety, they do have an obligation. Yes. And I think plaintiffs on appeal have conceded this point, that for there to be a duty to disclose, there has to be a safety So that's the issue with the Consumer Legal Remedies Act. The issue is, is it a safety defect? That's one of the issues. It's not the basis on which the district court – it's not the basis on which the district court decided. That's an alternative ground that we raised. And what's the other? The plaintiffs agree that, assuming a duty to disclose exists, the plaintiff had the additional burden of proving that, had the disclosure been made, the plaintiff would have been aware of it and would have changed their behavior. And the district court found there was no evidence of any disclosure that the plaintiffs would have been made aware of, because their only claim is that they would have been aware of what a Ford dealer salesperson told them. And they admit that those are not our agents, that they're not proceeding on the basis of agency. And their theory, therefore, is either that Ford had a contractual right to require certain disclosures by the dealer or that the dealer would have voluntarily complied with a request by Ford to disclose that the vehicles were not fit for their intended purposes. Neither of those theories were presented – were supported by any evidence whatsoever. The plaintiffs are simply imagining these as possibilities without bothering to present evidence. With that, I'd like to turn to the Song-Beverly implied warranty claim. And respectfully, the issue is not quite whether the Court should follow Mejia. Really, the issue is, because Mejia is contrary to Atkinson, there are two cases from the California Court of Appeals, Mejia and Atkinson, which are conflicting and this Court's case law is clear that where there are conflicting State law opinions, this Court on its own must determine for itself what the – what the California Supreme Court, in effect, is likely to do. And what the Supreme Court – it's not likely that the California Supreme Court would adopt an interpretation of the Song-Beverly 1-year duration limit that would, in effect, make that provision meaningless. Yeah, but isn't the situation in Atkinson that the issue was what is the duration of the implied warranty of merchantability under Magnuson Moss, and the precise issue of the equitable tolling in Mejia was not even considered by the Court. So I don't think they're inconsistent, are they? They are inconsistent. First of all, Mejia did not address equitable tolling. That's what plaintiffs argue in their briefs, and they cite Federal statute of limitations decisions to support an equitable tolling position which was not addressed or decided in Mejia. Both Mejia and Atkinson addressed the duration of the implied warranty under Song-Beverly. In Atkinson, it was – the specific issue was what's the duration under Magnuson Moss, but to determine the duration under Magnuson Moss, the Court looked to section 1791 of the Song-Beverly Act, which is the case. But if the cases are in fact in conflict, why shouldn't we certify the issue to the California Supreme Court? I agree that that would be appropriate. The only downside, as you pointed out, Judge, is that they denied review in Mixey itself. However, that's sort of like a denial of cert by the U.S. Supreme Court. I don't think it reflects an opinion one way or the other on how it would be decided. And it may be that the Court wanted to let the issue percolate for a while in the lower courts. And since the Court denied review in Mejia, there have been numerous Federal court decisions that have split. And right now, the Federal court, the lower district courts are in disarray illustrating the need for definitive guidance on this issue. So I would agree with you that certifying this issue to the California Supreme Court would be appropriate. On the other hand, I don't think, if you think about it, I don't think there can be any reasonable debate about how the California Supreme Court would decide it, because if you accept the plaintiff's position, the one-year durational period would be meaningless. Their position essentially is, is that as long as the defect exists during the warranty period, then the one year period is satisfied. Well, there's two possibilities. Scalia. That's what Mejia says, right? That's what Mejia says. And there's two possibilities, though. And why, even if Mejia were the only decision on point and Atkinson didn't exist, still it would be the exact type of case where this Court would be justified in not following Mejia for this reason. There are two possibilities. One, the plaintiff proves the existence of a defect at the time of sale, in which case the plaintiff wins, regardless, you don't need to consider the one-year period. Second possibility, the plaintiff fails to prove a defect that exists at the time of sale, in which case the defendant wins. In either case, there's no need to consider the one-year period. And so what the plaintiff's argument does, and what Mejia does, is effectively read the one-year limited duration out of the Act. And there's another way to look at this. Consider what the result would be, how the case would be analyzed if the manufacturer — if instead of being a statute, it was an express warranty by the manufacturer. In other words, a warranty that had a one-year limit, time-limited warranty. Time-limited express warranties are uniformly interpreted to require that the product fail or malfunction within the warranty period. The mere existence of the defect within the warranty period is not — does not mean it's covered. That was the holding of the California Court of Appeal in Daugherty v. American Honda. It was the holding of this Court following California law in Clemens v. Daimler Chrysler. And it's the holding of virtually every court that has ever considered the issue since the Second Circuit decisions in a case called Abraham. There's no reason to consider that the legislature in adopting a time-limited warranty intended to accomplish anything different. Isn't the reasoning in Mexia that California interprets things liberally to the benefit of consumers? Yes. But that would — but then that would mean that we should — the consumer should win regardless of what the statute says. And it did. What the Song-Beverly Act did in the context of implied warranty is it basically established a new implied warranty separate from the UCC implied warranty, which did not require proof of privity like the — like the UCC warranty does, and that cannot be disclaimed like the UCC implied warranty can be disclaimed. And so it did broaden the protection available to consumers, but at the same time it limited the protection that was given to consumers by limiting the duration to one year. And it's — you know, that's not inequitable. You know, the MAGMAS Act, federal law in most states, including California, all recognize, even in the UCC context, that it's perfectly appropriate or proper for a manufacturer to limit the duration of the implied warranty. And, by the way, if we were dealing here with a manufacturer's limitation on the duration of the implied warranty, that would be interpreted the same way as a limit on the express warranty. In other words, if Ford — if we were dealing here with Ford's limitation of the duration of the implied warranty, the courts interpreting such a limitation would require proof of a malfunction or failure in the warranty period. And so time-limited warranties, of which the statute is simply one, are always interpreted to require malfunction or failure within the warranty period. Kennedy. If the district court was wrong, and you're wrong, on the Mexica issue, does that mean your other claim, the Magnuson, fails? You lose on that, too? Yes, because Magnuson Moss follows State law. I do — I will point out that we do have many alternative grounds to affirm, particularly none of these plaintiffs have any proof of tire wear caused by the defect. Plaintiffs say that those issues should be remanded to the district court to decide in the first instance. If this Court agrees, that's fine with us. But, you know, if we lose on these arguments, we don't lose summary judgment. We have a whole host of other arguments. I'm just about out of time unless this Court has questions on the third point. On the third point on express warranty, I would simply point out that the language of the warranty that actually describes what the warranty will do specifically says that we will repair or replace manufacturing defects in materials and workmanship. That's the language, the operative language that expressly says what it is the warranty covers. The language that the plaintiffs are relying is language that attempts to disclose to consumers that Ford is not guaranteeing that there will be no defects, that, in fact, there may be defects of design or manufacturing. But the operative language of the warranty itself says we will cover only manufacturing defects. And I would point out that, again, time-limited warranties like this have been uniformly interpreted to apply only to manufacturing defects. In fact, the 2005 and 2006 warranty language applied to only to factory defects and factory materials and workmanship. Plaintiffs are arguing that we somehow expanded that by adding the word manufacturing in front. Unless this Court has questions, I'll submit. Thank you, counsel. On that last point of express warranty, I urge the Court to look. It's all on one page, 295, volume 3 of the excerpts of record. Got the word defect in there or the word design in there expressly. And Ford says it's providing the warranty, quote, in order to remedy any such defects. Go back to implied warranty. I do agree with my colleague that the Magnuson-Moss Act claim does follow the Song-Beverly Act claim, stands or falls either way. About Mexia, counsel made a good argument, if he'd been in the Court of Appeal in Mexia or perhaps in the Supreme Court, why it was wrong. But the Court considered those arguments. The Court rejected the notion that the one-year limitation is absolute. It applied equitable tolling. Equitable tolling is not a novel concept in the law. This Court went and banked a couple of years ago to say that the Federal Tort Claims Act, which has a six-month absolute limitation, that that was subject to equitable tolling, and the Supreme Court affirmed. So that's — it's not a crazy interpretation. Whether Mexia conflicts with the Atkinson case, we discussed that on page 38 of our opening brief. Was Atkinson after or before Medea? It is before, Your Honor. And I think it's worth pointing out that Mexia itself cites Atkinson three or four times, and the Mexia court itself doesn't see any conflict between the two decisions. I'd like to last address reliance. My colleague chided plaintiffs for not producing evidence. We do have evidence. We have declarations. We cite and quote those on page 19 of our opening brief in footnote 3. And as to agency, we did raise agency. We pled in the complaint that the dealers were Ford's agents. That's at page 338 of the excerpts of record, and Ford did not deny that as a matter of fact. That's at page 319 of the excerpts of record. We think agency is legally irrelevant, but we certainly pled it, and in our briefs we show that there is evidence. And with that, Your Honor, I'd like to ask the Court to reverse the judgment of the district court, and in so reversing, remind the district court that it should under the rules and under this Court's cases reconsider the motion for class certification. Thank you. Thank you, counsel. Thank you both. Case disargued will be submitted. The Court will stand in recess for the day. Thank you.
judges: Molloy, Reinhardt, Hawkins